T.C. Memo. 2017-11

UNITED STATES TAX COURT

ESTATE OF RUBEN A. MYERS, DECEASED, KEN NORTON, EXECUTOR,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20823-15L.                    Filed January 10, 2017.

P asks us to review a determination by IRS Appeals sustaining a lien notice and a notice of proposed levy to collect delinquent installment payments of estate tax. The gravamen of P's complaint is that R abused his discretion during the 10-year period before the delinquency by not pursuing collection from nonprobate assets not under P's control. Following the CDP hearing, the settlement officer prioritized collection actions first against nonprobate assets and certain jointly owned probate property. P misunderstands the I.R.C. sec. 6324(a)(1) special estate tax lien, which attaches automatically on the date of death to the gross estate without any action by R and which lapses in 10 years. P also misunderstands the scope of our review under I.R.C. sec. 6330(d). We do not conduct broad-ranging inquiry into the means by which R has sought to collect estate tax over the years since decedent's death. Our narrow focus is on whether the settlement officer abused his discretion in sustaining the filing of the lien notice and the proposed levy notice. Moreover, we will not remand this case for consideration of changed circumstances

**[*2]** because the 10-year duration of the special estate tax lien lapsed during the pendency of this case after R froze collection actions on the filing of the petition. Although the special estate tax lien has lapsed, the period for asserting I.R.C. sec. 6324(a)(2) transferee liability may be open.

   Held: IRS Appeals' determination is sustained.

William Burwell Sellers, for petitioner.

Edwin B. Cleverdon, for respondent.

MEMORANDUM OPINION

  HALPERN, Judge: This case is before the Court to review a determination (determination) made by the Internal Revenue Service (IRS) Appeals Office (Appeals) following a collection due process (CDP) hearing conducted pursuant to sections 6320(b) and (c) and 6330(b) and (c).[1] The determination was that respondent's issuance of a notice of Federal tax lien (NFTL) should be sustained and that, as explained in more detail infra pp. 11-15, respondent may proceed by levy, seizure, or litigation to collect unpaid estate tax. Petitioner assigned

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect when the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all dollar amounts to the nearest dollar.

**[*3]** numerous errors to the determination. Respondent denies any error. We review the determination pursuant to section 6330(d)(1).

Background

Introduction

The parties have submitted this case for decision without a trial pursuant to Rule 122. They have stipulated certain facts and the authenticity of certain documents. In pertinent part, Rule 122(a) provides that "[a]ny case not requiring a trial for the submission of evidence (as, for example, where sufficient facts have been admitted, stipulated, established by deposition, or included in the record in some other way) may be submitted". Rule 151(e) addresses the form and content of briefs. Paragraph (e)(3) thereof requires the inclusion in an opening brief of proposed findings of fact, based on the evidence, with reference to the pages of the transcript or the exhibits or other sources relied upon to support the proposed finding. In his opening brief, petitioner proposes that we find some facts the source of which he identifies as the "Summary of Facts" section of his pretrial memorandum. Respondent objects to those proposed findings as well as to certain others the source of which respondent correctly identifies as allegations in the petition that respondent denied in the answer as not being supported by the factual record in this case. We agree that petitioner's proposed findings that respondent

**[*4]** objects to are not supported by the factual record, and we will disregard them. The facts stipulated are so found, and the documents stipulated are accepted as authentic.

Summary of Facts

When he filed the petition, petitioner resided in Heflin, Alabama.

Respondent is here attempting to collect unpaid estate tax. Decedent, Ruben A. Myers, passed away on November 15, 2005. On February 15, 2007, petitioner filed a Federal estate tax return and began making installment payments of estate tax pursuant to sections 6161 and 6166. From 2007 through 2013, petitioner timely made the required payments. In 2014, petitioner became delinquent in those payments. Revenue Officer (RO) Dale Baustert was assigned to collect the delinquent payments. On or about October 7, 2014, RO Baustert filed the NFTL with the appropriate authority. Soon thereafter, he notified petitioner that the NFTL had been filed and of his right to a CDP hearing. On October 29, 2014, RO Baustert notified petitioner of respondent's intent to levy to collect the delinquent tax and of petitioner's right to a CDP hearing (levy notice). As stated in the levy notice, petitioner's unpaid liability for estate tax, interest, and penalties was then $380,289.

**[*5]**  In response to both the NFTL and the levy notice, petitioner timely submitted to Appeals a Form 12153, Request for a Collection Due Process or Equivalent Hearing, asking for an offer-in-compromise (OIC), stating that he was unable to pay the balance due, and requesting withdrawal of the NFTL.  Petitioner did not dispute the underlying estate tax liability, interest, or penalties at issue.

After petitioner submitted the Form 12153, RO Baustert made an inappropriate contact with the settlement officer assigned to conduct petitioner's CDP hearing.  The case was, for that reason, assigned to another settlement officer, Settlement Officer (SO) Stephan Harding.

SO Harding sent petitioner a letter on March 9, 2015, scheduling a face-to-face CDP hearing for April 9, 2015.  His letter requested that, within 14 days, petitioner provide him with financial and other information, including a completed Form 656, Offer in Compromise, as well as documentation supporting the withdrawal of the lien and any other documentation petitioner wished SO Harding to review.  Petitioner provided SO Harding with the financial information requested, but he did not submit a Form 656.

SO Harding held the hearing as scheduled.  At the hearing, he verified the following.

**[*6]**   (a)  The requirements of any applicable law or administrative procedure had been met.

(b)  IRS records confirmed the proper issuance of the notice and demand, the NFTL, and the notice of a right to a CDP hearing.

(c)  Respondent properly assessed the tax shown on the CDP notice.

(d)  Notice and demand for payment was mailed to petitioner's last known address.

(e)  There was a balance due when the NFTL filing was requested.

(f)  He (SO Harding) had no prior involvement with respect to the specific tax periods either in Appeals or in Compliance.

(g)  The IRS followed all legal and procedural requirements, and the actions taken were appropriate under the circumstances.

At the hearing, petitioner stated that, for him to pay the delinquent estate tax liability from probate assets, he would have to sell family farmlands that would be difficult to liquidate, and he suggested that the IRS take action to collect the delinquent liability from third parties who had received cash or liquid assets attributable to decedent that were included in the gross estate but that were not probate assets.  He represented that, under Alabama law, he had no access to nonprobate assets as a source of funds to pay the estate tax liability.

**[\*7]**   On July 15, 2015, Appeals sent to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 of the Internal Revenue Code (notice).[2]   The notice recited SO Harding's determination to sustain the filing of the NFTL and the issuance of the levy notice.  He explained that, because petitioner had not submitted a Form 656, and on the basis of the financial information petitioner provided, he had concluded that petitioner was not eligible for an OIC.  He rejected the alternative of an installment agreement because petitioner had not requested one and, on the basis of the provided financial information, he had determined that such an agreement would not be appropriate. He determined, on the basis of the financial information petitioner provided, that petitioner did not qualify for noncollectible status or hardship.

   With respect to petitioner's suggestion that the IRS should satisfy the estate tax liability from nonprobate assets, SO Harding stated that he had taken into account petitioner's concerns, balancing those concerns against respondent's

---

   [2]The notice is signed by Darrell Pharms, Appeals Team Manager.  The notice itself contains only a "Summary of Determination"; it is, however, accompanied by an attachment that appears to be SO Harding's memorandum supplying the detail behind the summary of determination and repeating it verbatim.  Moreover, in the motion, respondent speaks of the settlement officer's making the necessary determination to proceed with collection.  We will, therefore, for the most part, speak in terms of SO Harding's making the determination to proceed with collection.

[*8] collection policies (as laid out in the Internal Revenue Manual). He determined that the IRS would "pursue collection of * * * [the estate] taxes first from the nonprobate assets and [certain real property in which petitioner had a partial interest]". He sustained RO Baustert's proposed levy "subject to this [aforesaid] sequence of levying/sale/collection from estate assets."

Finally, with respect to withdrawal of the NFTL, he explained that petitioner had not provided the documentation necessary to support withdrawal of the notice, and, on the basis of the information available, he had concluded that there was insufficient justification to withdraw it.

Petitioner filed the petition on August 17, 2015.

The special estate tax lien provided for in section 6324, discussed infra p. 13, expired on November 15, 2015, 10 years after decedent's death.

Respondent has not taken any action to attach or otherwise pursue collection of the estate tax liability with respect to nonprobate assets.

## Discussion

### I. Introduction

Our task is to determine whether SO Harding erred in determining to sustain the filing of the NFTL and the issuance of the levy notice. Although petitioner

[*9] assigned numerous errors to that determination,[3] in both his opening and reply briefs, petitioner states only the following two issues to be decided: "Whether the Commissioner abused his discretion by failing to file a lien against the non-probate assets before the statute of limitations ran which foreclosed on the possibility of collecting from non-probate assets, and determining that levying probate assets of the estate was efficient." We will limit our consideration to those

---

[3]Petitioner assigned the following errors.

a. The Commissioner failed to take into account the significant doubt as to the ability to collect the liability given the size of the liability, the previous payments made, the decline in value of the assets and the non-probate assets which the Petitioner cannot seize or otherwise access.

b. The Commissioner failed to take into account all the facts and circumstances surrounding the assessment against Petitioner, the proposed levy and the lack of viable collection alternatives.

c. The Commissioner failed to utilize his equitable power to determine that holding the Petitioner liable for additional tax would be unfair and inequitable.

d. The Revenue Officer assigned to this case, Dale Baustert engaged in ex-parte communications with [sic] substantially prejudiced the Petitioner and his attempts to reach a resolution of the outstanding tax liability.

e. The Commissioner failed to remove Mr. Baustert from the case and reassign it as the Petitioner request [sic] on several occasions to an officer who was not prejudiced against Petitioner.

[*10] issues in determining whether SO Harding erred in sustaining the filing of the NFTL and the issuance of the levy notice. See, e.g., Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954) (holding against the taxpayer with respect to an issue because, among other things, the taxpayer did not press the issue on brief), aff'd per curiam, 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954) ("Petitioners in their brief do not argue anything about * * * [the issue]; and, although they do not expressly abandon the issue * * * we presume they no longer press it.").

II.     Standard of Review

Sections 6320 and 6330 provide a taxpayer the right to notice and the opportunity for an Appeals hearing before the Commissioner can collect unpaid taxes by means of a lien or levy against the taxpayer's property. Where the validity of the taxpayer's underlying tax liability is not at issue (as it is not here), the Court reviews Appeals' determination regarding collection actions under an abuse of discretion standard of review. E.g., Sego v. Commissioner, 114 T.C. 604, 610 (2000). In reviewing for abuse of discretion, we must uphold Appeals' determination unless it is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 325 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). We do not substitute our judgment for that of the Appeals officer,

[*11] and we do not decide independently whether we believe the levy should proceed or the NFTL should be withdrawn. See id. at 320. Instead, we consider whether, in the course of making its determination, Appeals (1) verified that the requirements of applicable law and administrative procedure have been met, (2) considered any relevant issue raised by the taxpayer that relates to the unpaid tax or the proposed levy, including any collection alternative, and (3) determined whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary. See sec. 6330(c)(1)-(3).

III.    Analysis

A.    The Determination To Proceed With Collection

Petitioner is responsible for payment of the estate tax due on account of the transfer of decedent's taxable estate. See secs. 2001(a), 2002. That is so notwithstanding that the gross estate may include property that was not owned by decedent at the time of his death, that did not pass through probate, and, thus, that was never in petitioner's possession (i.e., nonprobate assets). See sec. 20.2002-1, Estate Tax Regs. Once petitioner became delinquent in paying the estate tax, respondent both filed an NFTL with respect to the probate property under petitioner's control and notified him of respondent's intent to levy to collect the

[*12] unpaid tax. See secs. 6321, 6331(d)(1). Petitioner invoked his rights to a CDP hearing, at which he was entitled to raise "any relevant issue relating to the unpaid tax or the proposed levy". See sec. 6330(c)(2)(A). Petitioner requested that respondent first pursue collection of the delinquent estate tax from the holders of nonprobate assets included in the gross estate. SO Harding was accommodating to that suggestion, and he included in the determination the statement that the IRS would "pursue collection of * * * [the estate] taxes first from the nonprobate assets".

It is true that if the estate tax is not paid when due the Commissioner may pursue collection from transferees and others who receive, or had on the date of the decedent's death, nonprobate assets includible in the gross estate under sections 2034 through 2042. See secs. 6324(a)(2), 6901(a)(1)(A)(ii), (h). Moreover, a lien for estate tax attaches at the date of the decedent's death to every part of the gross estate whether or not the property comes into the possession of an executor or administrator. See sec. 6324(a)(1); sec. 301.6324-1(a)(1), Proced. & Admin. Regs.

A principal aspect of petitioner's complaint with respect to the determination is that "[t]he Commissioner abused his discretion by failing to file a lien against the non-probate assets". Apparently, petitioner is referring to the

**[*13]** actions (or nonactions) of SO Baustert and, perhaps, other collection personnel in failing to file the special (section 6324) estate tax lien before petitioner defaulted on his payment obligation and respondent undertook administrative collection actions. We say that because petitioner states: "Despite having full authority under IRS Section 6324 * * * the revenue officer in the case sat idly by for ten (10) years, and refused to attach the non-probate assets from the estate."

We first observe that petitioner misunderstands section 6324. Unlike the general tax lien provided for in section 6321, which was the subject of the NFTL and which attaches to all property belonging to a taxpayer after assessment, demand, and nonpayment of the tax and which secures the payment of all types of Federal taxes, including estate taxes, the special estate tax lien comes into being without assessment or notice and demand automatically on the date of death, and it attaches to all of the property the value of which is included in the gross estate whether or not the property comes into the possession of the executor or administrator. It continues for 10 years unless, before the end of the 10-year period, the estate tax is paid in full or becomes unenforceable by expiration of the period of limitations on collection. See sec. 6324(a)(1). Petitioner's claim that respondent abused his discretion by failing to file a special estate tax lien against

[*14] the nonprobate assets the value of which was included in decedent's gross estate is without merit, since that lien came into existence upon decedent's death without the necessity of respondent's doing anything.

Putting aside petitioner's misunderstanding of the special estate tax lien, the gravamen of his argument seems to be that the NFTL and the levy notice are not efficient and the least intrusive means to collect the remaining estate tax because respondent unreasonably delayed for 10 years proceeding against nonprobate assets, and the unreasonableness of that delay is shown by SO Harding's belated decision that respondent should so proceed. Petitioner explains:

> As part of the balancing analysis done by the IRS, the Notice of Determination noted that the non-probate assets should be attached first. From this determination, it can be undisputed that the IRS viewed the attachment of the non-probate assets as no more intrusive than necessary. The IRS had ten (10) years to attach the non-probate assets and for reasons known only to the Commissioner, his agents failed to take any action to secure an interest in the non-probate assets for the payment of the tax liability. * * * [S]uch inaction clearly worked to the detriment of the estate. Therefore, it is unreasonable that the Commissioner * * * would attach the probate assets. * * * The petitioner should not suffer due to the dilatory actions of the IRS which clearly constitute an abuse of discretion.

Petitioner's argument reflects a basic misunderstanding of the scope of our review under section 6330(d)(1). The statute does not give us license to conduct a broad-ranging inquiry into the means by which respondent has sought to collect

**[*15]** estate tax from petitioner over the many years since decedent's death. Our focus is a narrow one: We ask only whether SO Harding abused his discretion in sustaining the filing of the lien notice and the proposed levy action.

Petitioner makes no argument that SO Harding failed to verify that issuance of the lien notice and the proposed levy action met the requirements of any applicable law or administrative procedure. Nor does petitioner identify any arguments he made at the hearing that SO Harding failed to consider. In particular, SO Harding considered, and honored, petitioner's request that respondent take action to avoid the need to proceed against family farmlands to secure payment of the estate tax due. SO Harding determined that respondent should pursue collection of the tax first from nonprobate assets and from parcels of real estate other than the family farmlands and proceed against the farmlands only if the amounts obtained from those other sources proved inadequate to satisfy the outstanding liability. Thus, petitioner can hardly complain that the collection action SO Harding recommended failed to "balance[] the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more intrusive than necessary." Cf. sec. 6330(c)(3)(C).

**[\*16]**  On the record before us, we find that SO Harding did not abuse his discretion in determining to sustain the filing of the lien notice and, subject to the specified sequence of collection actions, the proposed levy action.

B.     Postdetermination Events

We are left only to consider that, as the parties have stipulated, the section 6324 special estate tax lien encumbering the nonprobate assets included in the gross estate expired on November 15, 2015, and respondent has not taken any action to attach or otherwise pursue collection of the estate tax liability with respect to nonprobate assets.  Those are events occurring after Appeals issued the determination on July 1, 2015.  And while pursuant to our authority under section 6330(d) to review CDP determinations we may take into account changed circumstances, see Churchill v. Commissioner, T.C. Memo. 2011-182, 2011 WL 3300235, at \*6 ("[W]e do have authority to remand a CDP case for consideration of changed circumstances when remand would be helpful, necessary, or productive."), petitioner has not convinced us that a remand would be helpful, necessary, or productive.  Respondent explains that, pursuant to his collection procedures, he froze collection actions three months before the special estate tax lien lapsed when, on August 17, 2015, petitioner filed the petition.  See Internal Revenue Manual (IRM) pt. 5.1.9.3.5.1 (June 24, 2014) (stating that levy actions

[*17] are suspended on filing of timely CDP notice). "In other words," argues respondent, "[he] agreed to petitioner's request to pursue non-probate assets, but petitioner's actions prevented the collection action from going forward."

The regulations provide that the section 6324 special estate tax lien may be enforced by administrative levy. Sec. 301.6331-1(a)(1), Proced. & Admin. Regs. Notably, it may also be enforced by judicial foreclosure. See, e.g., United States v. Davis, 52 F.3d 781 (8th Cir. 1995). In general, levy actions that are the subject of a CDP hearing are suspended during the period of the hearing and any appeal. See sec. 6330(e)(1). Nonlevy collection actions, such as initiating judicial proceedings to collect the tax that gives rise to a CDP hearing, are permitted during that period. See secs. 301.6320-1(g)(2), Q&A-G3, 301.6330-1(g)(2), Q&A-G3, Proced. & Admin. Regs. We have no evidence of why respondent did not pursue judicial proceedings to foreclose on the estate's nonprobate assets, but it may have been his judgment that there was insufficient time given the apparent absoluteness of the lien's 10-year duration. See sec. 6324(a)(1); Davis, 52 F.3d 781 (10-year period is durational); United States v. Cleavenger, 517 F.2d 230 (7th Cir. 1975) (same). IRM pt. 5.17.2.9.1(2) (Dec. 12, 2014) states that the IRS will follow Davis and Cleavenger; "lien foreclosure must be completed before expiration of ten years."

**[*18]** We see no grounds for remand in respondent's suspension of collection action during the pendency of this action.

Before we close, we point out that there may still be ways for respondent to collect the estate tax liability from third parties. For example, the period of limitations applicable to the personal liability imposed on transferees and others by section 6324(a)(2) is not the 10-year period from the date of death provided in section 6324(a)(1). It is the 10-year collection period provided in section 6502(a) running from the date of assessment. See United States v. Bevan, No. 2:07-cv-1944 MCE JFM PS, 2008 WL 5179099, at *6 (E.D. Cal. Dec. 10, 2008); United States v. Degroft, 539 F. Supp. 42, 44 (D. Md. 1981). We do not know the date the estate tax was assessed, but the parties have stipulated that the estate tax return was filed February 15, 2007, a date that almost certainly was before the date the estate tax was assessed. The 10-year period for imposing personal liability is probably still open.

IV.    Conclusion

We will sustain Appeals' determination sustaining the filing of the lien notice and the proposed levy action.

                                                Decision will be entered for respondent.